[Cite as *Smith v. Natl. W. Life*, 2017-Ohio-4184.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104898

# ANTHONY SMITH

PLAINTIFF-APPELLANT

vs.

# NATIONAL WESTERN LIFE, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-843767

**BEFORE:** Stewart, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 8, 2017

**ATTORNEY FOR APPELLANT**

Margaret Mary Meko
The Meko Law Office, L.L.C.
2778 SOM Center Road, Suite 202
Willoughby Hills, OH 44094


**ATTORNEY FOR APPELLEES**

Natalia Steele
Vorys, Sater, Seymour & Pease, L.L.P
200 Public Square, Suite 1400
Cleveland, OH 44114

MELODY J. STEWART, J.:

**{¶1}** Plaintiff-appellant Anthony Smith sold annuity policies as an agent for defendant-appellee National Western Life Insurance Company. After National Western settled a lawsuit brought by one of Smith's clients, it terminated Smith's agency contract and charged him back for the commissions it paid him on that account under Smith's personal guaranty. Smith filed for bankruptcy and a third party satisfied the charge-back. National Western listed Smith's name with Vector One, an insurance industry service that provides agent screening tools to insurance companies, such as indicating that an agent, or potential agent, has a debit balance with another insurance company.

**{¶2}** Claiming that publication of the debt was false because the debt had been discharged in bankruptcy and otherwise satisfied, Smith raised claims for defamation and tortious interference with prospective economic advantage, claiming that he had been denied a position with a different issuer of annuities because of his listing with Vector One.

**{¶3}** The court dismissed the defamation claim as barred by the statute of limitations. It granted National Western summary judgment on the tortious interference claim because Smith did not sufficiently identify a business relationship with which National Western had interfered, nor did he sufficiently identify damages caused by National Western.

I. Dismissal of Defamation Claim

**{¶4}** Smith first argues that the court erred by granting National Western's motion to dismiss the defamation claim on grounds that he did not file his claim within the one-year statute of limitations.

**{¶5}** The tort of defamation has a one-year statute of limitations. *See* R.C. 2305.11(A). In paragraph 14 of his complaint, Smith alleged that National Western first reported the debt to Vector One "later in 2010." Smith filed his complaint on April 6, 2015. These facts conclusively show that Smith did not file his complaint within one year of publication to Vector One. *See* Civ.R. 12(B)(6); *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11.

**{¶6}** Smith conceded below that he did not file his defamation claim within one year of when he first became aware of the publication of his debt with Vector One. *See* plaintiff's response to defendant's amended motion to dismiss the complaint, at 4. He argued, however, that dismissal was premature because "[w]ithout discovery Plaintiff cannot determine how often the report was made to a third party, the nature of the report, how often it was updated and the extent of the accuracy of the report." *Id*.

**{¶7}** Smith sought and received three extensions of time in which to respond to the motion to dismiss the complaint: the first motion gave no reason why he needed an extension of time; the other two were based on counsel's workload and preexisting obligations that prevented timely filing a brief in opposition to the motion to dismiss. None of the three motions for an extension of time were based on the need for additional time in which to conduct discovery and raise substantive claims in opposition to the

motion to dismiss. The claim that counsel needed additional time to conduct discovery was never raised before Smith filed his brief in opposition to the motion to dismiss.

**{¶8}** In any event, Smith was not entitled to discovery in order to seek out facts to defeat a motion to dismiss. A Civ.R. 12(B)(6) motion to dismiss is a challenge to the facts pleaded in the complaint. For that reason, a Civ.R. 12(B)(6) motion cannot be decided on facts that are not contained in the complaint. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). And although a statute of limitations affirmative defense often invokes facts beyond the complaint, a complaint can be dismissed when on its face it conclusively indicates that the action is time-barred under the applicable statute of limitations. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 13.

**{¶9}** The complaint showed no set of facts that would enable Smith to defeat National Western's statute of limitations affirmative defense on the defamation claim. Additional facts would have no bearing on the merits of the motion to dismiss. Under certain circumstances, a motion to dismiss can be converted into a motion for summary judgment, but only when the "motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court[.]" Civ.R. 12(B). In other words, conversion is possible only if the movant raises matters outside the complaint in a motion to dismiss — the nonmoving party cannot raise additional facts in response to a motion to dismiss with the hope of having the motion converted to a motion for summary judgment. Smith's only option

was to seek leave to amend the complaint under Civ.R. 15 or voluntarily dismiss the case without prejudice under Civ.R. 41(A) and refile it with additional facts. Having done neither, he has failed to show that the court erred by dismissing the defamation claim.[1]

## II. Summary Judgment on Tortious Interference
## with Prospective Economic Advantage Claim

{¶10} Our disposition of Smith's first assignment of error relating to the defamation claim controls the disposition of his second assignment error relating to the summary judgment on the tortious interference claim: the tortious interference claim was based on the same facts as the defamation claim, so if the defamation claim fails under the statute of limitations, then so does the tortious interference claim.

{¶11} The statute of limitations for a claim of tortious interference is four years. *See* R.C. 2305.09(D); *Samman v. Nukta*, 8th Dist. Cuyahoga No. 85739, 2005-Ohio-5444, ¶ 23. However, "[t]he ground of the action and the nature of the demand determine which statute of limitation is applicable." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 173, 297 N.E.2d 113 (1973), citing *State ex rel. Lien v. House*, 144 Ohio St. 238, 58 N.E.2d 675 (1944), paragraph one of the syllabus.

---

[1] Smith argues for the first time on appeal that the continuing publication of his name by Vector One was a new publication that restarted the statute of limitations period. We adhere to the rule that a party may not raise arguments for the first time on appeal. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 34. Nevertheless, that claim would not have prevailed if raised because Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations. *Fleming v. Ohio Atty. Gen.*, 10th Dist. Franklin No. 02AP-240, 2002-Ohio-7352, ¶ 14; *Greer v. Natl. City Corp.*, 5th Dist. Delaware No. 08 CAE 12 0076, 2009-Ohio-5172, ¶ 51.

**{¶12}** As pleaded by Smith, the defamation and tortious interference claims were based on the same underlying fact — National Western's publication of Smith's debt with Vector One. Because the separate claims were based on the same tortious act, "only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act." *Rush v. Maple Hts.*, 167 Ohio St. 221, 224, 147 N.E.2d 599 (1958), syllabus. Stated differently, "multifold aspects of the same wrongful act * * * do not permit multiple suits." *Henderson v. Ryan*, 13 Ohio St.2d 31, 35, 233 N.E.2d 506 (1968).

**{¶13}** Courts have overwhelmingly found that if a defamation claim fails on the statute of limitations, so too must a tortious interference claim based on the same conduct as the defamation claim. *See, e.g.*, *Wild v. Rarig*, 302 Minn. 419, 447, 234 N.W.2d 775 (1975); *Evans v. Philadelphia Newspapers, Inc.*, 411 Pa.Super. 244, 249-252, 601 A.2d 330 (1991) ("We conclude that since Appellants' claim for tortious interference is based upon the alleged false and defamatory character of the communication complained of, and it is indistinguishable from the claims of libel and slander, the same one year limitation period should apply to both."); *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex.2014) ("We now similarly conclude that if a tortious interference claim is based solely on defamatory statements, the one-year limitations period for defamation claims applies."); *Ramsay v. Mary Imogene Bassett Hosp.*, 113 A.D.2d 149, 151, 495 N.Y.S.2d 282 (1985) (finding essence of plaintiff's alleged claims to be defamation); *Rutherford v. Johnson*, 250 Cal. App. 2d 316, 58 Cal. Rptr. 546 (Cal. Ct. App. 1967); *Eddy's Toyota v.*

*Kmart Corp.*, 945 F.Supp. 220, 226 (D.Kan.1996) ("Courts have also held that an expired claim for defamation cannot form the basis for a tortious interference claim * **."); *Prof. Recovery Servs., Inc. v. Gen. Elec. Capital Corp.*, 642 F.Supp.2d 391, 408 (D.N.J. 2009) (noting that where tortious interference claim was "based on allegedly defamatory statements and the defamation cause of action fails for lack of evidentiary support, the tortious interference claim necessarily fails as well."); *Guelen v. Distinctive Personnel, Inc.*, E.D.N.Y. No. 11-CV-01204, 2011 U.S. Dist. LEXIS 86064, 11-13 (Aug. 4, 2011) ("I conclude that the tortious interference claim is subject to the same one-year limitations period that attends the defamation claim.").

**{¶14}** Directly on point is *Hill v. Allianz Life Ins. Co. of N. Am.*, M.D.Fla. No. 6:14-cv-950-Orl-41KRS, 2016 U.S. Dist. LEXIS 31101 (Feb. 17, 2016). The district court considered facts very similar to those in this appeal: an insurance company whose agent refused to pay a charge-back had the agent's name listed with Vector One and the agent filed claims for defamation (publishing his name with Vector One) and tortious interference with an expectancy (the agent claimed that he had been denied employment with another insurer because of the Vector One listing). After finding the defamation claim barred by the statute of limitations, the district court cited Florida law for the proposition that under that state's "single publication/single action rule," "a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong." *Id*. at 27, citing

*Orlando Sports Stadium, Inc. v. Sentinel Star, Co.*, 316 So.2d 607, 609 (Fla.4th DCA 1975). The district court stated the relevant law as follows:

> Thus, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event," and courts should "dismiss [the] concurrent counts for related torts based on the same publication and underlying facts as the failed defamation count." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014), aff'd, No. 14-13855, 2015 U.S. App. LEXIS 23022 (11th Cir. Feb. 17, 2015). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Callaway Land & Cattle Co.*, 831 So. 2d at 208 (quotation omitted).

*Id.* at 24-25. Finding that the tortious interference claim "is based on the same publication and underlying facts as his failed defamation claim[,]" the district court granted summary judgment on the tortious interference claim. *Id.* at 25-26.

**{¶15}** We recognize that the First Appellate District appears to hold to the contrary in *Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 1st Dist. Hamilton No. C-140720, 2015-Ohio-4396. Kienow alleged that her supervisor placed what she believed was "false, negative and misleading information" in her personnel file. She claimed that her manager agreed that the information should be removed from her personnel file, but it was not. Kienow resigned her position in protest. She sought other employment and more than one year later received a verbal offer of employment, but the prospective employer withdrew the offer, allegedly because the former supervisor made "negative, misleading and false statements" about her to the hiring manager at the prospective place of employment.

{¶16} Kienow brought an action against the former employer asserting, as relevant here, claims for defamation and tortious interference. The trial court granted Civ.R. 12(B)(6) dismissals on both claims for being outside their respective statutes of limitations. The court of appeals upheld the dismissal of the defamation claim, but found that the trial court erred by dismissing the tortious interference claim. Acknowledging that trial courts could look beyond the face of the claim to determine its true subject matter, it held that the tortious interference claim was not really a defamation claim subject to a shorter limitations period. It found that a tortious interference claim "goes beyond damage to reputation[,]" and did not hinge on disseminating information but on "hindering a prospective and known business relationship[.]" *Id.* at ¶ 13. The court of appeals concluded that a tortious interference claim "is not of the same nature as a defamation claim." *Id.*

{¶17} The facts in *Kienow* are distinguishable because the defamation and tortious interference in that case were based on two different acts: the defamation claim consisted of allegedly false information contained in Kienow's personnel file; the tortious interference claim consisted of remarks made to the hiring manager of a prospective employer more than one year later. For this reason, the First District held that the tortious interference claim was specifically intended to hinder a prospective and known business relationship. In this case, there is no factual dispute that the defamation and tortious interference claims arose from a single act — National Western's listing Smith's name with Vector One.

**{¶18}** We are aware that when ruling on National Western's motion for summary judgment, the court stated that it would not analyze any arguments related to the statute of limitations with respect to the tortious interference claim. Nevertheless, there is no question that Smith's tortious interference claim was based on the same conduct underlying the defamation claim. Because the claims were based on the same conduct, we find as a matter of law for purposes of Civ.R. 56 that the one-year statute of limitations for defamation applied to both claims.

**{¶19}** Even were we to address the merits of Smith's assignment of error relating to the summary judgment on the tortious interference claim, we would find no error. Smith offered no evidence to show a genuine issue of material fact with respect to National Western's privilege to list his name with Vector One.

**{¶20}** The elements of a claim for tortious interference with a business relationship or contract are: (1) a business relationship or contract; (2) the defendant's knowledge of the relationship or contract; (3) the defendant's intentional or improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Byrne v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 95971, 2011-Ohio-4110, ¶ 28, citing *Castle Hill Holdings, L.L.C. v. Al Hut, Inc.*, 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353, ¶ 46.

**{¶21}** Because it is a tort, a claim of tortious interference requires an improper act. *Syed v. Poulos*, 8th Dist. Cuyahoga Nos. 103137 and 103499, 2016-Ohio-3168, ¶ 17, citing *Baseball at Trotwood, L.L.C. v. Dayton Professional Baseball Club*, S.D.Ohio No.

C-3-98-260, 2003 U.S. Dist. LEXIS 27460 (Sept. 2, 2003). One of the elements of the tort, the lack of privilege, makes it clear that some acts, while potentially falling within the definition of the tort, may not constitute improper conduct. "[O]ne is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract." *Pearse v. McDonald's Sys. of Ohio, Inc.*, 47 Ohio App.2d 20, 25, 351 N.E.2d 788 (10th Dist.1975). *See also Castle Hill Holdings, L.L.C.*, at ¶ 48.

{¶22} Smith argued below that National Western wrongly listed him as having a credit balance because his debt was discharged in bankruptcy and later satisfied by a third party. We disagree with Smith's interpretation of a bankruptcy: it discharges a debtor's liability on a debt, but it does not extinguish the underlying debt. *See FB Acquisition Prop. I, L.L.C. v. Gentry (In re Gentry)*, 807 F.3d 1222, 1228 (10th Cir.2015) ("A bankruptcy court can grant a discharge, but a discharge does not extinguish the underlying debt rather it changes a debtor's liability for that debt."). Smith, despite his personal guaranty, did not personally satisfy the debt to National Western consistent with his personal guaranty. His bankruptcy is proof of that fact.

{¶23} Smith goes on to argue that National Western wrongly listed him despite a third party having paid the charge back — he claims that the debt was fully satisfied. Smith's complaint made it clear that the third party did not pay off the debt until *after* his name was listed in the Vector One report. The tortious interference claim was based on

the initial listing with Vector One, so National Western acted in furtherance of its own legally protected interest by reporting him to Vector One. In any event, the fact remains that Smith was unable to live up to his promise to personally guarantee any debts that he owed to National Western. He declared personal bankruptcy to avoid satisfying the charge back. By any measure, his listing on the Vector One report truthfully indicated that he failed to fulfill his financial obligations to National Western. On that basis, the court did not err by granting summary judgment on the tortious interference claim.

{¶24} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR