[Cite as *Ra v. Ohio Atty. Gen.*, 2020-Ohio-1346.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Kevin Ra et al.,                           :

    Plaintiffs-Appellants,           :

                                               No. 19AP-533
v.                                         :        (Ct. of Cl. No. 2019-00212JD)

Ohio Attorney General's Office,            :        (ACCELERATED CALENDAR)

    Defendant-Appellee.              :

D E C I S I O N

Rendered on April 7, 2020

**On brief:** *Wendy S. Rosett*, for appellants Vista REO Settlement Services, LLC, and Parcel Revenue Corporation; *Kevin Ra*, pro se. **Argued:** *Wendy S. Rosett* and *Kevin Ra*.

**On brief:** *Dave Yost*, Attorney General, and *Randall W. Knutti*, for appellee. **Argued:** *Randall W. Knutti*.

APPEAL from the Court of Claims of Ohio

PER CURIAM

{¶ 1} Plaintiffs-appellants, Kevin Ra ("Ra"), Vista REO Settlement Services, LLC ("Vista"), and Parcel Revenue Corporation ("PRC"), appeal the July 11, 2019 judgment of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Ohio Attorney General's Office, on appellants' claims of negligence, tortious interference with business relationships, and intentional infliction of emotional distress and dismissing appellants' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. For the following reasons, we affirm the trial court judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   The following facts are not in dispute unless otherwise indicated.   On November 16, 2017, appellee filed an action in the Cuyahoga County Court of Common Pleas asserting various claims against Ra, Vista, Housing Court Assistance Program, Inc. ("HCAP"), and Greater Cleveland Housing Partnership, Inc. ("GCHP") involving the operation of HCAP and GCHP as charities and Ra's use of charitable assets.  The same day, a news release entitled "Cleveland-Area Man Accused of Using Nonprofit for Personal Gain" was posted on the "News Releases" page of appellee's website.  (News Release at 1, attached as Ex. B to Compl.)

{¶ 3}   The news release announced the commencement of a lawsuit against Ra accusing him of converting nonprofit funds for personal benefit, breaching his fiduciary duties, failing to register charitable trusts with the Attorney General's Office, and failing to cooperate with an investigation, among other alleged violations.  The news release specified that Ra is accused of using his nonprofit entities—HCAP and GCHP—to benefit himself by allegedly offering free assistance to homeowners facing violations in Ohio housing courts but then using the nonprofits to buy and sell property rather than for charitable purposes. The news release further stated the lawsuit includes "about $50,000 in questionable expenditures" between 2012 and 2014 and four instances where the nonprofit "bought and then quickly sold property in Cleveland but apparently never received the proceeds."  (News Release at 1.)  The news release advised the reader that suspected charitable fraud should be reported to appellee and provides contact information to do so.

{¶ 4}   The parties settled the Cuyahoga County action on January 29, 2018. Pursuant to the settlement agreement, Ra agreed to dissolve and wind down HCAP, never incorporate or create an Ohio nonprofit organization in the future, not hold any position within a charitable or nonprofit organization in Ohio, or otherwise participate in charitable solicitations in Ohio.  Ra, HCAP, GCHP, and Vista agreed to "waive and release any and all claims and causes of action against [appellee], and any current or former employee or agent of [appellee], relating to [appellee's] investigation of Defendants or the Pending litigation." (Settlement Agreement at 3, attached as Ex. A to Compl.)  The agreement expressly states it does not preclude Ra, either individually or through another entity, from engaging in real estate transactions or providing services to real property owners as a for-profit business,

subject to certain restrictions. Once Ra's commitments were met, appellee agreed to dismiss the pending Cuyahoga County litigation with prejudice. Under the miscellaneous provisions, the parties agreed that the Cuyahoga County Court of Common Pleas retained jurisdiction to enforce the settlement agreement. The agreement is silent regarding the news release.

{¶ 5} On February 22, 2019, appellants filed a complaint against appellee contending "[t]he [news] release falsely depicts Ra and his business operations as criminal in nature and contains information couched as 'accusations' which [appellee] knows are false and/or misleading and/or baseless." (Compl. at ¶ 21.) The complaint states appellants became aware of the news release in February 2018 and, at that time, asked appellee to remove it from its website, but appellee refused to do so. According to the complaint, appellee then instituted a "policy" that it "used to destroy Ra's and Vista's reputation in perpetuity with allegations [appellee] knew were without merit." (Compl. at ¶ 23.) The complaint defines the policy as appellee's: "procedure, and/or custom wherein the [November 16, 2017 news] release was allowed to remain published to [appellee's] website, remain available to the public"; appellee's programming and/or manipulation of appellee's website using Search Engine Optimization ("SEO")[1] techniques to display the news release each time a person types Ra's name or email address into Google; and appellee's use of certain " 'snippets'[2] to ensure that any Google search containing Ra's name displays knowingly false allegations that Ra violated Ohio law." (Compl. at ¶ 23-24, 32.) The complaint alleges the domain name associated with Ra's email address (@parcelrevenue.com) was not purchased until March 23, 2018 and, therefore, could not have existed at the time the settlement agreement was signed and its use by appellee in SEO and snippets occurred post-settlement and in bad faith. Appellants contend this policy was approved and implemented sometime in February 2018, after the settlement agreement was signed and after Ra asked appellee to remove the news release from appellee's website.

---

[1] The complaint describes "SEO" as "the use of keywords, written content, and metadata (hidden data which sits in the background of a website unseen by the viewer but visible to Google) to ensure that a particular word or phrase is displayed in Google search results." (Compl. at ¶ 25.)

[2] "Snippets," again according to the complaint, are "a summary of the information contained on a website that consist of only a few lines of text. Google users read snippets which convince said users that a website contains the information they are seeking." (Compl. at ¶ 33.)

{¶ 6} From these allegations, appellants asserted claims for: (1) breach of contract and breach of the implied covenant of good faith and fair dealing in regard to the settlement agreement; (2) negligence; (3) tortious interference with business relationships; (4) declaratory judgment; and (5) intentional infliction of emotional distress. Regarding the breach of contract claim, the complaint states appellee breached the settlement agreement by "intentionally and/or maliciously and/or inadvertently" undermining Ra's ability to receive the benefit of the parties' settlement agreement by essentially undermining Ra's for-profit business. (Compl. at ¶ 70.) The claim for declaratory judgment also related to the settlement agreement itself and, in particular, concerned the language of the waiver and release clause and the implied duty of good faith and fair dealing.

{¶ 7} Regarding the negligence claim, appellants asserted in their complaint:

> *Post-settlement*, [appellee] owed [appellants] a duty of care to ensure any information published on [appellee's] website about [appellants'] business affairs is true and accurate and/or [appellee] owed [appellants] a duty of care to ensure any information published on [appellee's] website about [appellants'] business affairs is not false and/or misleading and/or materially misleading. [Appellee] also owes [appellants] a duty of care, once it issues a [news] release about a business or individual and later learns that the information set forth in said [news] release is false, inaccurate, misleading, and/or offered in *bad faith*, to immediately update or remove said [news] release so as not to cause undue harm to others (*e.g.*, [appellants]).

(Emphasis sic.) (Compl. at ¶ 74.) Appellants believed this duty of care was breached by appellee's "implementation of the policy and/or other unlawful actions which will be proven at trial" and, as a result of the breach, appellant suffered economic and non-economic injuries. (Compl. at ¶ 75.)

{¶ 8} Regarding the tortious interference with business relationships claim, appellants stated appellee had actual knowledge of appellants' potential business relationships with owners of abandoned and blighted properties, real estate investors and landlords, angel investors and venture capitalists, municipal governments, and real estate agents, and, without privilege or justification, "acted intentionally, improperly, and maliciously interfered with and caused the termination of [appellants'] business relationships" as well as prevented appellants from acquiring and/or continuing

established and/or prospective business relationships. (Compl. at ¶ 84.) As to intentional infliction of emotional distress, appellants asserted that appellee's actions were intended to cause Ra serious emotional distress by intentionally subjecting Ra to false allegations of criminal behavior and conduct which appellee knew or should have known Ra did not commit. Further, appellants contended the purpose of appellee's creation and implementation of "the policy" was designed to annoy and harass Ra and to unjustly and unfairly ridicule him in front of his community, family, and industry peers. (Compl. at ¶ 96.) In addition to seeking the declaratory judgment on the settlement agreement, appellants asked for damages in the amount of $1.6 billion for Counts One, Two and Three, plus an additional amount to be determined at trial on Count Five, court costs and attorney fees, and any additional relief deemed equitable by the trial court.

{¶ 9} On March 25, 2019, appellee filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and (6). Within it, appellee argued that Ra's, Vista's, and PRC's claims were quintessential "disguised defamation" claims since they all "hinge on their contention that the news release was false and caused them reputational harm." (Mot. to Dismiss at 1.) As a result, appellee contended the claims fail both because appellee is immune from liability for defamation relating to its work and because the one-year statute of limitations had expired. Appellee additionally argued that regardless of whether the claims are classified as disguised defamation, the claims are barred due to the waiver in the settlement agreement, and the contract and emotional distress claims are baseless as a matter of law.

{¶ 10} The trial court converted appellee's motion to dismiss into a motion for summary judgment, pursuant to Civ.R. 12(B), and allowed both parties time to submit additional materials. Appellants filed a brief in opposition to appellee's converted motion for summary judgment arguing against characterizing the claims as defamation, asserting the waiver in the settlement agreement did not preclude the action, and contending appellee's arguments regarding tortious interference should be rejected. Affidavits of Ra and a board member of PRC were attached to the memorandum in opposition. Ra attests "[a]t the time of the execution of the agreement, I had no way of knowing or anticipating that [appellee] would disseminate the false, misleading, and/or prejudicially outdated information and allegations contained in the [news] Release and allow the same to remain accessible to the public without redactions, corrections, updates, modifications or

otherwise."  (Ra Aff. at ¶ 26.)  Ra and PRC board member Ross Brankatelli also attest to the news release being a "driving force" behind loss of business.  (Brankatelli Aff. at ¶ 4.)

{¶ 11}  On July 11, 2019, the trial court issued a decision and judgment in favor of appellee.  First, the trial court found that, under the express language of the settlement agreement, the Cuyahoga County Court of Common Pleas retained jurisdiction to adjudicate appellants' claims of breach of contract, breach of implied covenant of good faith and fair dealing, and appellants' request for declaratory judgment.  Therefore, the trial court dismissed those claims.  Next, the trial court found appellee is entitled to summary judgment on appellants' tort claims—negligence, tortious interference with business relationships, and intentional infliction of emotional distress—because those claims essentially constitute "disguised defamation claims" and "the Ohio attorney general has an absolute privilege to publish material that is defamatory" in the performance of official duties.  (Trial Ct. Decision at 7.)  Therefore, the trial court found appellee was entitled to judgment as a matter of law on the tort claims.

{¶ 12}  Appellants filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 13}  Appellant assigns the following as trial court error:

> 1.  Reviewing the matter *de novo*, the Court of Claims erred to the prejudice of the Appellants-Plaintiffs by granting partial summary judgment in favor of the Appellee-Defendant Ohio Attorney General's Office erroneously holding that the Appellants' tort claims were all "disguised defamation claims[.]"
>
> 2.  Reviewing the matter *de novo*, the Court of Claims erred to the prejudice of the Appellants-Plaintiffs by granting partial summary judgment in favor of the Appellee-Defendant Ohio Attorney General's Office erroneously holding that the Appellee was entitled to "absolute privilege" to publish material that is defamatory.

## III.  STANDARD OF REVIEW

{¶ 14}  Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.  *Harless v. Willis Day Warehousing*

*Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107 (1996). "Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 19AP-58, 2019-Ohio-3632, ¶ 6, citing *Dresher* at 293.

{¶ 15} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 14AP-272, 2014-Ohio-5354, ¶ 10, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## IV.  LEGAL ANALYSIS

### A.  Appellants' First Assignment of Error

{¶ 16} Under the first assignment of error, appellants contend the trial court erred to their prejudice by holding the tort claims were "disguised defamation claims" and, on that basis, granting partial summary judgment to appellee. (Appellants' Brief at viii.) For the following reasons, we disagree.

{¶ 17} Defamation is the publication of a false statement " 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades*

*Council*, 73 Ohio St.3d 1, 7 (1995). A trial court may characterize a claim presented by a plaintiff as one for defamation if the grounds for bringing the action support such a characterization. *Singh v. ABA Publishing Am. Bar Assn.*, 10th Dist. No. 02AP-1125, 2003-Ohio-2314, ¶ 25-27, citing *Worpenberg v. The Kroger Co.*, 1st Dist. No. C-010381 (Mar. 2, 2002). Whether a plaintiff's claim is actually "disguised defamation" is determined on a case-by-case basis. *See Worpenberg*; *Breno v. Mentor*, 8th Dist. No. 81861, 2003-Ohio-4051, ¶ 10; *Singh* at ¶ 25-27.

{¶ 18} Where the "predominant subject matter" of a plaintiff's action is "the alleged damage to the [plaintiff's] reputation caused by the circulation of allegedly false information," a trial court does not err in determining the claim is actually one for defamation rather than the claims listed in the complaint. *Singh* at ¶ 25-27, citing *Worpenberg*. *See also Breno* at ¶ 12 ("where a claim is expressly premised upon a 'communication' of false information, it is properly characterized as a 'disguised defamation' claim").

{¶ 19} However, where the plaintiff's stated claim is based on separate conduct or conduct of a different nature than the publication of defamatory material, some courts have found the claim should not be reclassified as a defamation claim. *See Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 1st Dist. No. C-140720, 2015-Ohio-4396, ¶ 13 (finding, on the facts of that case, a tortious interference claim was distinguishable from a defamation claim based on the conduct of the defendant); *Breno* at ¶ 13 (noting that "where a claim for reputational harm sounds in defamation, some courts have allowed a negligence claim to survive in spite of the communication if the complaint addresses other noncommunicative negligent conduct by the defendant"); *Hester v. Case W. Res. Univ.*, 8th Dist. No. 107492, 2019-Ohio-1991, ¶ 20 (determining whether the court's disposition of the plaintiff's defamation claim governed its disposition of the tortious interference claim rested on whether those claims were "predicated on the same conduct").

{¶ 20} In this case, appellants argue their three tort claims (negligence, tortious interference with business relationships, and intentional infliction of emotional distress) are based on appellee's post-settlement conduct and should not have been consolidated into a defamation action. Appellants contend courts do not routinely characterize actions as disguised defamation and generally only do so within the context of determining the

proper application of the statute of limitations. Appellants believe the trial court misapplied *Worpenberg* and *Schaumleffel v. Muskingum Univ.*, S.D. Ohio No. 2:17-cv-463 (Mar. 6, 2018), and assert the facts of this case are distinguishable from cases that involved claims based solely on a purportedly false communication and instead align with cases such as *Kienow* that involve separate conduct. Specifically, appellants argue that, here:

> The [news] Release, through the Appellee's intentional acts of failing to remove, amend or update it when asked to do so by Appellant Ra and Appellant Vista, became associated with the internet name used by Appellant PRC. Now a Google search of Appellant Ra's for-profit company's email address (a common investigatory tactic undertaken by individuals looking to gain insight on another individual) reveals the outdated, false, and incorrect [news] Release that contains information that the Appellee knows is inaccurate, outdated, misleading, and/or completely false. * * * Most notably, the [news] Release states that the "investigation" and civil actions against Appellant Ra and Appellant Vista are open and ongoing, which they are no longer and did not end in any court findings or judgment.[3] Based thereon, reasonable minds can only conclude that the Appellee's motive in continuing to maintain the [news] Release, especially without any updates, is to interfere with the Appellants' business relationships and that the Appellee intended to inflict damages beyond that of a typical breach.
>
> * * * As it relates to the outdated, inaccurate, and misleading [news] Release, reasonable minds can conclude that the Appellee's only purpose is to interfere with said relationships.

(Appellants' Brief at xx-xxi.)

{¶ 21} Appellee counters all appellants' claims rest on the alleged falsity of the new release or the complaint it summarized, and when claims are based on a communication that is alleged to be false, the "essential character of the underlying tort action" is defamation, as stated in *Breno* at ¶ 10. Moreover, appellee states that this case does involve a statute of limitations issue, as appellants filed their case more than one year after the news release was posted. Appellee notes that under R.C. 2305.11 and case law from this court, the one-year statute of limitations begins to run at the time the words are written or spoken, not when the plaintiff becomes aware of them, and that under case law non-substantive

---

[3] We note the news release does not expressly state the investigations and civil actions are open, ongoing, or pending.

website updates and SEO efforts do not constitute a "republication" that would trigger a new statute of limitations start date. (Appellee's Brief at 10.) In other words, appellee contends this case does not include conduct independent of the news release to support appellants' tort claims with longer statutes of limitations.

{¶ 22} We agree with appellee. The crux of this case is whether appellants cited "post-settlement conduct" serves as grounds to support their claims for negligence, tortious interference with business relationships, and intentional infliction of emotional distress, or whether the trial court was correct in concluding appellants' claims essentially constitute disguised defamation claims aimed at the news release. (Appellant's Brief at xii.) Having reviewed the complaint and considered the arguments of the parties, we cannot say the trial court erred.

{¶ 23} First, even assuming appellants' claim about post-settlement "policy" is true,[4] we nevertheless find that each tort claim brought by appellants is inextricably premised on appellee's communication of the allegedly false news release. Stated another way, absent the allegedly false news release, there would be no basis for the negligence, tortious interference with business relationships, and intentional infliction of emotional distress claims asserted by appellants in this case. Consistent with *Singh*, *Worpenberg*, *Breno*, and *Hester*, we find despite the form of the complaint, the predominant subject matter of appellants' action is the alleged damage to appellants' reputation and adverse effects on their business or profession caused by the circulation of allegedly false information in the news release. These grounds sound in defamation.

{¶ 24} Second, appellants have not convinced this court that the post-settlement conduct alleged here—failing to remove or update the news release and the SEO and snippet activity—is so separate or different in nature from the defamation claim to support the tort claims styled in the complaint. In *Worpenberg*, the First District Court of Appeals found that a plaintiff's claim grounded in the defendant's failure to take remedial steps after dissemination of a defamatory statement was properly characterized by the trial court as a disguised defamation claim since the claim was premised on an alleged false communication. *Id.* As provided above, like *Worpenberg*, we find the claims here to be

---

[4] This court denied appellants' motion for this court to take judicial notice of three items that appellants believed evidenced the allegations in their complaint regarding appellee's post-settlement "policy" but note it is the nature of the claims that has determined the outcome of this appeal. (Compl. at ¶ 23.)

premised on an alleged false communication and find appellants' attempt to distinguish this case from *Worpenberg* based on the parties' contractual relationship to each other to be of no consequence. Moreover, the cases cited by appellants, in particular *Kienow*, are distinguishable. As provided by the Eighth District Court of Appeals in *Smith v. Natl. W. Life*, 8th Dist. No. 104898, 2017-Ohio-4184, ¶ 17, in *Kienow*:

> [T]he defamation and tortious interference in that case were based on two different acts: the defamation claim consisted of allegedly false information contained in Kienow's personnel file; the tortious interference claim consisted of remarks made to the hiring manager of a prospective employer more than one year later. For this reason, the First District held that the tortious interference claim was specifically intended to hinder a prospective and known business relationship.

In this case, appellants do not allege appellee communicated to prospective business partners aside from posting the news release on its public website. Instead, the tort claims here are all premised on appellee's continued publication of the allegedly false news release on appellee's public website and appellee's manipulation of SEO and snippets of that same exact news release. As a result, we do not believe *Kienow* controls the outcome here.

{¶ 25} Third, appellants' argument that disguised defamation cases are usually reserved for cases that implicate the avoidance of a statute of limitations supports, rather than detracts, from our conclusion. The statute of limitations is implicated in this case. In their complaint, appellants did not attempt to directly bring a defamation claim based on the November 16, 2017 publication of the news release itself. As argued by appellee, had they tried to do so, their claim would have been deemed untimely under the one-year statute of limitations for defamation and precedent of this court. *Singh*, 2003-Ohio-2314, at ¶ 22 (finding one-year statute of limitations for bringing a libel action based on allegedly defamatory materials is triggered on the initial date of publication); *Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶ 21. *See also T.S. v. Plain Dealer*, 194 Ohio App.3d 30, 2011-Ohio-2935, ¶ 8-12 (8th Dist.) (finding that increasing the circulation of a publication already available on the internet, without changing the original content or singling it out for republication, does not provide a basis in Ohio law to depart from the initial date of publication as that trigger for the statute of limitations for causes of action based on allegedly defamatory materials); *Smith* at ¶ 9, fn. 1 ("Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls

for purposes of the statute of limitations."); *Spitzer v. Knapp*, 5th Dist. No. 19 CAE 01 0006, 2019-Ohio-2701, ¶ 26, quoting *Friedler v. Equitable Life Assur. Soc. of the United States*, 86 F.Appx. 50 (6th Cir.2003) (" 'Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers.' ").

{¶ 26} Because appellants filed their complaint beyond the one-year statute of limitations for defamation based on appellee's November 16, 2017 publication of the allegedly false news release and there is no allegation that the news release was changed or republished, a defamation claim based on the news release is untimely. Appellants, instead of filing a timely defamation claim, filed a complaint premised on appellee's conduct in connection with the allegedly false news release but with claims defined in terms of torts with statute of limitations that would theoretically allow the lawsuit to proceed. These circumstances support the trial court's conclusion that appellants' tort claims essentially constitute a claim for defamation. Therefore, considering all the above, we find the trial court did not err by holding the tort claims were "disguised defamation claims" and, on that basis, granting summary judgment to appellee on the tort claims. (Trial Ct. Decision at 7.)

{¶ 27} Accordingly, appellants' first assignment of error is overruled.

## B. Appellants' Second Assignment of Error

{¶ 28} Under the second assignment of error, appellants contend the trial court erred to their prejudice by holding appellee was entitled to "absolute privilege" to publish material that is defamatory. (Appellants' Brief at ix.) Finding no prejudice to appellants on this issue, we disagree.

{¶ 29} In the first assignment of error, we held the trial court did not err by holding the tort claims were "disguised defamation claims." (Trial Ct. Decision at 7.) In doing so, we addressed the parties' arguments regarding the statute of limitations and concluded this case did implicate a statute of limitations issue. We determined the disguised defamation claim is untimely because, under Ohio law, the one-year statute of limitations for bringing an action based on allegedly defamatory material is triggered on the initial date of publication, and merely increasing the circulation of a publication already publicly available on the internet, without changing the original content or singling it out for republication,

does not provide a basis to depart from this general rule. *Singh* at ¶ 22; *T.S.* at ¶ 8-12; *Smith* at ¶ 9, fn. 1; *Spitzer* at ¶ 26.

{¶ 30} Having done so, assuming for sake of argument, but not deciding, that the trial court's holding as to appellee's privilege to publish the alleged defamatory material was in error, such a holding did not prejudice appellants since the untimeliness of the claim supports the trial court judgment. *See Smith* at ¶ 18 (finding that, where all claims were based on the same conduct underlying a claim for defamation and the claims were untimely filed, summary judgment in favor of the defendant was appropriate even where the trial court did not discuss the statute of limitations issue); *Singh* at ¶ 22-28 (affirming summary judgment in favor of defendant where plaintiff's action was untimely under the statute of limitations for defamation). We note appellee raised the statute of limitations issue to the trial court as an alternative means to grant summary judgment on the tort claims. Considering the legitimate alternative basis from which to grant summary judgment in appellee's favor here, appellants' argument they were prejudiced by the trial court's finding regarding privilege lacks merit.

{¶ 31} Accordingly, appellants' second assignment of error is overruled.

## C. Appellee's Cross-Assignments of Error

{¶ 32} Appellee presents three cross-assignments of error. First, appellee argues Vista and Ra waived their right to bring this suit based on language in the settlement agreement. Second, appellee argues that neither appellee's filing of its lawsuit in Cuyahoga County nor its settlement of that case give rise to tortious interference claims as a matter of law. Third, appellee argues the implied duty of good faith in contracts applies only to matters that could not have been contemplated at the time of drafting.

{¶ 33} As a preliminary issue, we must determine whether we may consider the cross-assignments of error. App.R. 3(C)(1) provides, in part, that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." App.R. 4(A)(1) provides that "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal * * * within 30 days of that entry." If a notice of appeal "is timely filed by a party, another party may file a notice of

appeal within the appeal time period otherwise prescribed by this rule or within ten days of the filing of the first notice of appeal."  App.R. 4(B)(1).

{¶ 34}  "The time requirements for filing a cross-appeal pursuant to App.R. 4(A) are mandatory and jurisdictional."  *Kaplysh v. Takieddine*, 35 Ohio St.3d 170 (1988), paragraph one of the syllabus.  "Without an effective notice of appeal this court lacks jurisdiction to address the alleged errors raised by plaintiffs."  *Thompson v. Knobeloch*, 10th Dist. No. 16AP-809, 2017-Ohio-66, ¶ 3, citing *Boulware v. Chrysler Group, L.L.C.*, 10th Dist. No. 13AP-1061, 2014-Ohio-3398, ¶ 11.  "Accordingly, when a party fails to comply with the time requirements of App.R. 4 in filing their notice of cross-appeal, an appellate court is without jurisdiction to consider the merits of the cross-assignment of error."  *One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 81, citing *Tod v. Cincinnati State Technical & Community College*, 10th Dist. No. 10AP-656, 2011-Ohio-2743, ¶ 94.  *Thompson* at ¶ 3.  Here, appellee never filed a notice of cross-appeal. Therefore, this court lacks jurisdiction to consider the merits of appellee's cross-assignments of error to the extent they seek to change the trial court judgment.  *One Energy Ents.* at ¶ 82; App.R. 3(C)(1).

{¶ 35}  To the extent appellee's cross-assignments of error do not seek to change the trial court judgment but, rather, offer arguments in support of alternative reasons to affirm the trial court's judgment under App.R. 3(C)(2), we find such arguments to be moot considering our resolution of appellants' first and second assignments of error. Accordingly, we need not pass on the propriety or merits of appellees' three cross-assignment of error in this regard.  *Fowler v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 16AP-867, 2017-Ohio-7038, ¶ 4, 23.  *See also* App.R. 12(A)(1)(c); *Sourial v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 17AP-731, 2018-Ohio-2528, ¶ 61.

## V.  CONCLUSION

{¶ 36}  Having overruled appellants' first and second assignments of error and determined appellee's three cross-assignments of error to be moot, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER, P.J., BROWN and LUPER SCHUSTER, JJ., concur.

_____