[Cite as *McCann v. Durrani*, 2023-Ohio-3953.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| HEATHER MCCANN, | : | APPEAL NOS. C-220025 |
|  |  | C-220033 |
|    Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO.   A-1506572 |
|  | : |  |
|   vs. | : | *O P I N I O N.* |
|  | : |  |
| ABUBAKAR ATIQ DURRANI, M.D., | : |  |
|  | : |  |
|   and | : |  |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : |  |
|  | : |  |
|    Defendants-Appellants/Cross-Appellees, | : |  |
|  | : |  |
|   and | : |  |
| WEST CHESTER HOSPITAL, LLC, | : |  |
|  | : |  |
|   and | : |  |
| UC HEALTH, | : |  |
|  | : |  |
|   Defendants. | : |  |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:   Affirmed in Part and Reversed in Part in C-220025; Affirmed as Modified in C-220033

Date of Judgment Entry on Appeal: November 1, 2023

*Robert A. Winter Jr.*, *James F. Maus*, and *Benjamin M. Maraan, II*, for Plaintiff-Appellee/Cross-Appellant,

*Taft Stettinius & Hollister LLP*, *Philip D. Williamson*, *Aaron M. Herzig*, *Russell S. Sayre*, *Anna M. Greve*, *Lindhorst & Dreidame Co., LPA*, *Michael F. Lyon*, *James F. Brockman*, and *Paul J. Vollman*, for Defendants-Appellants/Cross-Appellees.

CROUSE, **Presiding Judge.**

{¶1}   After a jury trial, defendants-appellants/cross-appellees Dr. Abubakar Atiq Durrani and his spinal surgery practice, the Center for Advanced Spine Technologies, Inc., ("CAST") (collectively, "appellants") were found liable for medical negligence and fraudulent misrepresentation following two surgeries Dr. Durrani performed on plaintiff-appellee/cross-appellant Heather McCann. Appellants challenge the trial court's award of past medical expenses, future medical expenses, prejudgment interest, and court costs to Ms. McCann, arguing that the trial court should have entered a judgment of $0 for Ms. McCann.

{¶2}   Ms. McCann cross-appeals, arguing that appellants were not entitled to a setoff of $157,530.83 against the jury's award.

{¶3}   For the reasons that follow, we affirm the trial court's award of past and future medical expenses, reverse the trial court's award of prejudgment interest and court costs, and modify the amount of the setoff.

## *I. Factual and Procedural History*

{¶4}   In 2005, Ms. McCann suffered a back injury resulting in an injured tailbone and temporary paralysis. By mid-2006, her tailbone injury had healed, but she still suffered from chronic back pain. Ms. McCann was treated conservatively for her pain with pain medications, steroid injections, and nerve blocks. Ms. McCann worked intermittently and received social security disability payments.

{¶5}   Eventually, Ms. McCann was unable to continue working and was granted permanent disability status by the Social Security Administration. In 2012, she was referred to Dr. Durrani for consultation on her condition and options to relieve her chronic back pain, numbness, and headaches. These conditions were all attributed

to her 2005 back injury.

{¶6} Dr. Durrani recommended spinal surgery for Ms. McCann. In July 2012, Dr. Durrani performed a C1-C2 fusion surgery on her neck, and in February 2013, Dr. Durrani performed a T7-T9 fusion surgery on her mid-back. These surgeries involved placing rods and screws on one side of her spine.

{¶7} Following these surgeries, Ms. McCann claimed that her pain worsened. Eventually, she had another doctor remove the rods and screws Dr. Durrani placed. After that, Ms. McCann claimed that her pain lessened, and she regained some range of motion in her neck.

{¶8} In December 2015, Ms. McCann filed suit against Dr. Durrani and CAST, as well as the hospital where the surgeries were performed and the parent company of the hospital (collectively, the "hospital defendants").[1] Ms. McCann asserted claims against Dr. Durrani for negligence; battery; lack of informed consent; intentional infliction of emotional distress; fraud; and spoliation of evidence. She asserted claims against CAST for vicarious liability; negligent hiring, retention, and supervision; spoliation of evidence; violation of the Ohio Consumer Sales Practices Act; and fraud.

{¶9} Following a trial, the jury returned a verdict for Ms. McCann on her claims for negligence and fraudulent misrepresentation. The jury awarded Ms. McCann $58,076.40 for past medical expenses, $50,000 for future medical expenses, $50,000 for future pain and suffering, and $50,000 for future loss of enjoyment of life. The total award of compensatory damages was $208,076.40.

{¶10} Appellants filed a notice of appeal in 2021. We requested jurisdictional

---

[1] The hospital and its parent company reached a separate settlement with Ms. McCann and were dismissed as defendants. They are not parties to this appeal.

briefing from the parties and subsequently dismissed that appeal as premature.

{¶11} After resolving all posttrial motions, the trial court granted appellants' motion for a setoff in the amount of $157,530.83 as a result of Ms. McCann's settlement with the hospital defendants. This reduced her compensatory damages award to $50,545.57. Additionally, the trial court awarded Ms. McCann $13,919.25 in prejudgment interest and $7,494.40 in court costs.

{¶12} This appeal timely followed.

## II. Analysis

{¶13} In their sole assignment of error, appellants argue that "The trial court should have entered a judgment of $0 for Ms. McCann." Specifically, appellants contend that the trial court should have vacated the jury's awards of past and future medical damages, and that it was erroneous for the court to award Ms. McCann prejudgment interest and court costs.

{¶14} In her cross-appeal, Ms. McCann raises in a single assignment of error that the trial court erred in granting appellants a setoff against her damages award.

### A. Past Medical Damages

{¶15} Appellants argue that Ms. McCann lacked standing to seek damages for past medical expenses, because her past medical expenses were fully paid by her health insurance providers, the Centers for Medicare & Medicaid Services ("Medicare") and Medicaid of Ohio ("Medicaid"). As a result, appellants contend that this court must vacate Ms. McCann's past-medical-damages award. Appellants primarily rely on *Shealy v. Campbell*, 20 Ohio St.3d 23, 25, 485 N.E.2d 701 (1985), for their standing argument.

{¶16} Appellants contend that *Shealy* stands for the proposition that when an

5

insurer has fully paid for the loss suffered by its insured, the insured no longer has a right of action against the wrongdoer. Appellants further argue that because they argued below that Medicare and Medicaid were the real parties in interest, the trial court erred by not joining them as parties pursuant to Civ.R. 17 and Ms. McCann had no standing to proceed against appellants for past medical expenses.

{¶17} Ms. McCann does not dispute that all her medical expenses were paid by her insurers, Medicare and Medicaid, but, she contends, that fact did not defeat her standing to sue for those expenses.

{¶18} In order to resolve this issue, we must first discuss the difference between standing and real party in interest.

{¶19} The concepts of standing and real party in interest are related, but the interests being served and consequences for their absences are distinct. *See Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir.1992) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle."); *Hammes v. Brumley*, 659 N.E.2d 1021, 1029 (Ind.1995) ("The concepts of standing and real party in interest often are understandably—but incorrectly—considered one and the same."). Courts and litigants often struggle to tease apart these concepts. *See, e.g., Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008) (collecting cases).

{¶20} The Ohio Constitution provides that the courts of common pleas have "original jurisdiction *over all justiciable matters* * * * as may be provided by law." (Emphasis sic.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 20, quoting Ohio Constitution, Article IV, Section 4(B). A fundamental requirement for a matter to be "justiciable" is that the party

bringing suit has standing to sue. *See id.* at ¶ 21. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Davet v. Sheehan*, 8th Dist. Cuyahoga No. 101452, 2014-Ohio-5694, ¶ 22, citing *Schwartzwald* at ¶ 21. In this context, standing is a prerequisite to invoke the jurisdiction of the court: "a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court * * * over the party's attempted action." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22, citing *Schwartzwald* at ¶ 22. Standing to sue must be determined at the time the action is filed, and its absence requires that the complaint be dismissed. *Schwartzwald* at ¶ 40. If no party with standing to sue has properly invoked the jurisdiction of the court in the first instance, that defect cannot be cured later by substitution of a party with proper standing. *Id.* at ¶ 38.

{¶21} In addition to the standing necessary to invoke the jurisdiction of the court, the civil rules provide that "[e]very action shall be prosecuted in the name of the real party in interest." Civ.R. 17(A). The question of whether a party has standing to sue is distinct from whether the party is the real party in interest. "The purpose behind the real party in interest rule is * * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." (Internal quotations omitted.) *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 54 (1st Dist.), quoting *Shealy*, 20 Ohio St.3d at 24, 485 N.E.2d 701. The central concern of the real-party-in-interest rule is proper party joinder. *Id.* at ¶ 56, citing *Schwartzwald* at ¶ 33. Under Civ.R. 19(A), a person who "has an interest relating to the subject of the action

7

as an assignor, assignee, subrogor, or subrogee" is a necessary party to be joined, if feasible. *Id.* However, because this rule is procedural, it must be timely raised, or else it will be waived. *Id.*

{¶22} In a medical-malpractice case, there can be both economic losses, such as medical expenses or lost wages, *see* R.C. 2315.18(A)(2), and noneconomic losses, such as pain and suffering, *see* R.C. 2315.18(A)(4). Because both types of damages are caused by "the same tortious act, 'only a single cause of action arises * * *.' " *See Smith v. Natl. W. Life*, 2017-Ohio-4184, 92 N.E.3d 169, ¶ 12 (8th Dist.), quoting *Rush v. Maple Hts.*, 167 Ohio St. 221, 221, 147 N.E.2d 599 (1958), syllabus ("Because the separate claims were based on the same tortious act, 'only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act.' "). And because there is only a single cause of action, regardless of the "separate items of damage" that may be awarded, the injured party does not lose standing to sue merely because she did not have out-of-pocket costs with regard to her past medical expenses.

{¶23} Appellants contend that *Shealy v. Campbell* stands for the proposition that Ms. McCann lacked standing to pursue past medical expenses. *Shealy* did state that "when the loss is *fully paid* by an insurer and the insurer becomes subrogated to the insured's claim against the wrongdoer, the insured no longer has a right of action against the wrongdoer." (Emphasis added.) *Shealy* at 25. However, *Shealy* does not apply to this case because Ms. McCann's entire loss was not "fully paid," by her health insurance providers. Ms. McCann's past medical expenses were only part of her entire

8

claim for damages. Only her past medical expenses were paid by insurance.[2]

**{¶24}** Appellants also cite *Holibaugh v. Cox*, 167 Ohio St. 340, 148 N.E.2d 677 (1958), to support their contention that Ms. McCann lacked standing to pursue past medical expenses.

**{¶25}** *Holibaugh* does hold that if the defendant raises the real-party-in-interest issue then the insurer must be joined as a party. *Id*. at 346. But *Holibaugh* does not stand for the proposition that Ms. McCann lacked standing. In fact, it stands for just the opposite. The *Holibaugh* court held:

> An insured who is injured by a tortious act retains his ownership of the resultant claim for damages against the tortfeasor in that he may, in the absence of a motion or a raising of the issue of joinder, maintain an action thereon in his own name for the full amount of damages, even though he has made a partial assignment of the claim to an insurer.

(Emphasis added.) *Id*. at 345-346.

**{¶26}** The court went on to explain:

> [T]he mere agreement between an insured and his insurer, a thirdparty contractee having no connection whatever with the tort-feasor, as to the extent of the liability of such *insurer to such insured* under the terms of the contract does not delineate absolutely the extent of the legal liability of the *tort-feasor to the insured*.
>
> To so hold might well deprive the injured insured of the right to recover

---

[2] It is also important to note that *Shealy* concerned an insurer of a *tortfeasor*. *Shealy* held "that an insurance company, *which pays the entire amount of a judgment* pursuant to a policy issued to an insured *tortfeasor* and thereafter becomes subrogated to that claim, is the sole real party in interest in a subsequent action brought against a joint tortfeasor for contribution pursuant to R.C. 2307.31(C)." (Emphasis added.) *Shealy*, 20 Ohio St.3d at 26, 485 N.E.2d 701.

from the tort-feasor damages incurred as a direct result of the tort but not reimbursable by the insurer under the terms of the insurance contract.

\* \* \*

The extent of liability of a tort-feasor *is fixed at the time of the commission of the tort*, and his interest in respect to a partial-assignee insurer, aside from the possibility of obtaining evidence of admissions made by the injured party to such insurer, is merely to see that the insurer is joined in a suit against him in order to have determined therein all who may have an interest in any judgment which may be rendered against him, and the relative extent of such interest.

(Emphasis in first paragraph sic; emphasis in third paragraph added.) *Id.* at 349-350.

{¶27} Thus, the point of the real-party-in-interest rule is to protect the tortfeasor from the risk of litigating multiple lawsuits and being subjected to multiple judgments. And in a case where the insurer only paid part of a plaintiff's damages, the plaintiff has standing and is also a real party in interest along with her insurer. In this case, there can be no question that Ms. McCann had standing to bring an action against appellants. Independent of Ms. McCann's claim for past medical expenses, which appellants challenge, Ms. McCann's complaint presents damage claims for future medical expenses, lost income, and past and future pain and suffering. Appellants do not challenge Ms. McCann's standing to seek these other forms of relief. As a result, Ms. McCann had standing to invoke the jurisdiction of the court, and the only remaining question is whether the joinder rules have been satisfied as to the real-party-in-interest issue.

{¶28} At the close of plaintiff's evidence, appellants moved for a directed verdict as to the past medical damages, arguing that Medicare had not been joined. The trial court denied the motion. Appellants then asked the trial court to set aside the jury's award of past medical damages in their motion for judgment notwithstanding the verdict ("JNOV"), again pointing to Ms. McCann's failure to join Medicare. In response, the trial court ordered Ms. McCann to identify all parties possessing a subrogated interest in her claim and to file a motion to join them. Ms. McCann identified Medicare, Medicaid, and United Healthcare as potential subrogees and moved to join them as plaintiffs. The court granted the motion.

{¶29} Eventually, Medicaid joined the action as a party plaintiff and presented its claim for damages against appellants. Following negotiation with Ms. McCann, however, Medicaid notified the court that its subrogation claim had been settled and dismissed its claim against appellants with prejudice.

{¶30} Ms. McCann later informed the court that United Healthcare did not have a claim against Ms. McCann's recovery, and appellants have not challenged that assertion.

{¶31} Despite the trial court's repeated orders, Ms. McCann never obtained the voluntary participation of Medicare in this action. However, in her December 2020 report to the court on her attempts to join Medicare, Ms. McCann claimed to have settled Medicare's claim as part of a settlement reached in April 2020. The trial court found that appellants acknowledged that Medicare had settled its claim at a July 2021 hearing on the joinder issue. As a result, the court ordered that Ms. McCann was entitled to retain the jury's award of past medical damages.

{¶32} At the time of filing, Medicare and Medicaid were the real parties in

interest as to Ms. McCann's past medical expenses. However, following the trial, Ms. McCann settled with Medicare and Medicaid. Consequently, Ms. McCann became the sole real party in interest as to those past medical expenses.

{¶33} We agree with the trial court that appellants did not waive the real-party-in-interest issue. Unlike *Setters*, where appellants merely raised the issue in general terms in their answer, in the case at bar, appellants raised the issue in their answer, and again raised the issue naming a specific absent party, Medicare, in their motion for a directed verdict and their JNOV motion. *See Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 57-58 (noting that, under Civ.R. 12(H), a defense of failure to join a party may be raised at trial).

{¶34} However, we also agree with the trial court that the issue was resolved, if in a somewhat less than straightforward manner, when Ms. McCann settled the subrogation claims with her subrogees, effectively terminating their subrogation rights. The core function of the real-party-in-interest rule is proper joinder of necessary parties, and the purpose of that function is to "enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Id.* at ¶ 54. The typical cure for failing to join the real party in interest is joinder of that party. However, where the plaintiff has bought back the subrogation right from the subrogee, the same purpose is achieved because the subrogee no longer has any claim against the defendant.

{¶35} Under these circumstances, the trial court did not err by permitting Ms. McCann to retain the jury's award of past medical expenses.

### B. *Future Medical Damages*

**{¶36}** Appellants argue that Ms. McCann failed to prove to a sufficient degree of certainty the future medical expenses she would incur as a result of appellants' tortious conduct, and therefore the trial court should have vacated that portion of the jury's award. Appellants argue that neither of Ms. McCann's expert witnesses "offered more than a guess about her future damages."

**{¶37}** Appellants raised the issue of future medical expenses before the trial court in a motion for a directed verdict at the close of plaintiff's evidence, as well as in their JNOV motion. The trial court denied both motions.

**{¶38}** We review the trial court's denial of a JNOV motion de novo. *Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 28. A JNOV motion is a test of the legal sufficiency of the evidence. *Id.* In reviewing the motion, we construe the evidence "most strongly in favor of the party against whom the motion is made." *Id.* If there is "substantial evidence" supporting the nonmoving party, such that " 'reasonable minds may reach different conclusions, the motion must be denied.' " *Id.*, quoting *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). We review the denial of a motion for a directed verdict under the same standard. *Id.* at ¶ 27, fn. 3.

**{¶39}** "A plaintiff's claim for future medical expenses must be supported by evidence that reasonably establishes the amount to be incurred in the future." *Setters* at ¶ 40, citing *Stone v. Patarini*, 9th Dist. Lorain No. 98CA007242, 2000 Ohio App. LEXIS 2709, 3 (June 21, 2000). " '[T]he jury cannot be allowed to speculate or guess in making allowance for future medical expenses, and, to this end, there must be some data furnished to the jury upon which to predicate an estimate of future costs.' " *Id.*,

quoting *Waller v. Phipps*, 1st Dist. Hamilton No. C-000758, 2001 Ohio App. LEXIS 4119, 4 (Sept. 14, 2001).

{¶40} At trial, Ms. McCann elicited testimony in support of future medical costs from her expert witness, Keith Wilkey, an orthopedic surgeon. Dr. Wilkey testified that, because of Dr. Durrani's actions, Ms. McCann will need "ongoing medical care and pain management" and "at least another cervical surgery sometime in the next 20 years." Wilkey also testified that "those procedures are upwards of $200,000," as a comprehensive total cost for the procedure, including the costs for the hospital, the anesthesiology, and the doctor.

{¶41} Wilkey's testimony was corroborated by Ms. McCann's expert witness, Stephen Bloomfield, a neurosurgeon. Bloomfield testified that, because of Dr. Durrani's actions, Ms. McCann "will require ongoing pain management and also ongoing evaluations with serial scans to make sure that she doesn't have any delayed instability develop." Bloomfield did not testify to the estimated costs involved.

{¶42} The jury awarded Ms. McCann only $50,000 for future medical expenses, well below the costs estimated by Ms. McCann's expert witnesses. Construing the evidence presented in favor of Ms. McCann, as the nonmoving party, we find that there was enough nonspeculative evidence to support the jury's verdict.

### C. *Prejudgment Interest and Court Costs*

{¶43} Appellants argue that Ms. McCann was not entitled to prejudgment interest or court costs. In addition to their attack on the merits of the trial court's award of prejudgment interest, appellants contend that Ms. McCann withdrew her motion for prejudgment interest and court costs and the trial court had no authority to reinstate it.

{**¶44**}  Ms. McCann filed her motion for prejudgment interest and court costs in March 2019. In October 2020, the trial court entered judgment in favor of Ms. McCann on the December 2018 jury verdict. However, the judgment entry left several issues pertaining to the parties' outstanding motions undecided. Notably, Ms. McCann's motion for prejudgment interest and court costs was still pending. In March 2021, Ms. McCann withdrew her motion for prejudgment interest and court costs. In her appellate brief, Ms. McCann states that she withdrew her motion for prejudgment interest and court costs "to create finality in the trial court and move the case to this Court for resolution." Thus, Ms. McCann did not wish to pursue prejudgment interest and court costs. Shortly after she withdrew her motion, appellants filed a notice of appeal, attaching the October 2020 judgment entry and several other of the trial court's orders.

{**¶45**}  Following jurisdictional briefing, we dismissed appellants' 2021 appeal for lack of a final, appealable order. *McCann v. Durrani*, 1st Dist. Hamilton No. C-210212 (July 29, 2021). In the order dismissing the appeal, we reasoned that Ms. McCann's withdrawal of her motion for prejudgment interest and court costs was precluded by *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126 (holding that a party may not create finality for appeal after the resolution of one claim by dismissing the remaining claims against the same party). Thus, we treated McCann's withdrawal of her prejudgment-interest motion as a nullity and held that the prejudgment-interest motion was still outstanding.

{**¶46**}  Our reference to *Pattinson* in the dismissal order was erroneous because *Pattison* referred solely to "claims" and a motion for prejudgment interest and court costs is not a "claim." Thus, the following month, in a different Durrani case

concerning the same issue, we issued a published opinion providing a different analysis of the effect of the withdrawal of a motion for prejudgment interest.

**{¶47}** In *Nichols v. Durrani*, 1st Dist. Hamilton No. C-210224, 2021-Ohio-2973, ¶ 4, we observed that when the time to file an appeal has been tolled by the filing of a motion for prejudgment interest, the time for filing a notice of appeal does not begin to run until "the trial court *enters an order* resolving the last of these post-judgment filings." (Emphasis sic.) *Id.*, quoting App.R. 4(B)(2). Thus, we held that even though the Nicholses had withdrawn their motion for prejudgment interest, the time to appeal had not begun to run because the trial court had not yet entered an order resolving the motion for prejudgment interest. We held that the notice of appeal was premature and dismissed the appeal. The appeal was dismissed rather than remanded under App.R. 4 (B) because the order appealed from was not otherwise a final appealable order due to its failure to mention damages. We stated, "We encourage the trial court to expeditiously resolve the damages issue and enter an appropriate judgment—*as well as to enter an order resolving the Nichols' postjudgment motion*—so that a timely appeal may be perfected and the parties can receive appellate guidance and certainty." (Emphasis added.) *Id*. at ¶ 7. We stated that we were issuing the opinion "to offer clarity to future parties who find themselves in a similar predicament." *Id*. at ¶ 2.

**{¶48}** After our dismissal of Ms. McCann's 2021 appeal, and after the release of our *Nichols* opinion, the trial court entered an order in this case that held that Ms. McCann's withdrawal of her motion for prejudgment interest and costs was a nullity, reinstated the motion, and ordered briefing on the issue.

**{¶49}** Appellants now argue that the trial court's reinstatement of Ms.

16

McCann's motion was erroneous. In response, Ms. McCann argues that, even if the reinstatement was erroneous, we must stand by our previous decision that the withdrawal was a nullity based on the law-of-the-case doctrine.

{¶50} The law-of-the-case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The doctrine is "a rule of practice rather than a binding rule of substantive law" and "functions to compel trial courts to follow the mandates of reviewing courts." *Id.*

{¶51} There is an exception to the law-of-the-case doctrine that compels a lower court to "take notice of an intervening decision, by a superior court, that is inconsistent with the law of the case." *Dean v. Grange Mut. Cas. Co.*, 5th Dist. Stark No. 2004CA00133, 2005-Ohio-857, ¶ 10, citing *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 16. Our decision in *Nichols* was published on August 27, 2021. Therefore, on August 30, 2021, when the trial court entered its order reinstating Ms. McCann's motion for prejudgment interest, the *Nichols* decision was an intervening decision. Under these circumstances, application of the law-of-the-case doctrine is excused, and the trial court should have followed the guidance of *Nichols* rather than the erroneous reasoning of the dismissal entry.

{¶52} Consequently, we agree with appellants that Ms. McCann's motion for prejudgment interest and court costs was withdrawn, and the trial court erred by reinstating it.

{¶53} Because we agree that the trial court should not have reinstated Ms. McCann motion, we sustain appellants' assignment of error to the extent that the trial

court erred by awarding Ms. McCann prejudgment interest and court costs. We overrule the assignment of error in all other respects.

### D. Cross-Assignment of Error: Setoff

**{¶54}** In her cross-assignment of error, Ms. McCann argues that the trial court erred by granting appellants a setoff from the judgment awarded to her in the amount of $157,530.82, which was based on the amount of the settlement reached between Ms. McCann and the hospital defendants. Ms. McCann argues that the trial court erred in granting appellants a setoff in this case because the jury found Dr. Durrani liable for an intentional tort, in addition to an unintentional tort. Alternatively, Ms. McCann argues that appellants are not entitled to a setoff because the appellants and the hospital defendants are not joint tortfeasors.

**{¶55}** "If a settling defendant is liable for any of the tort plaintiff's damages, then a nonsettling defendant is entitled to a setoff under R.C. 2307.28." *Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 62. However, we have previously described a "narrow legislative exception" to this rule that prevents an intentional tortfeasor from benefitting from the setoff. *Adams v. Durrani*, 2022-Ohio-60, 183 N.E.3d 560, ¶ 77 (1st Dist.), quoting *Eysoldt v. Proscan Imaging*, 1st Dist. Hamilton No. C-110138, 2011-Ohio-6740, ¶ 10.[3]

**{¶56}** In *Adams*, the plaintiffs presented claims including negligence, lack of informed consent, fraudulent misrepresentation, battery, and loss of consortium

---

[3] We note that the United States District Court for the Southern District of Ohio has recently called into question the soundness of our decision in *Eysoldt*, and by implication our decision in *Adams*, based on its interpretation of R.C. 2307.28. *Gorsha v. Clark*, S.D.Ohio No. 2:18-cv-508, 2022 U.S. Dist. LEXIS 16485, 20 (Jan. 31, 2022) ("After considering the record evidence and applying the plain language of §2307.28 (A), the Court finds as a matter of law that Plaintiffs are not entitled to a double recovery."). However, the parties have not argued that our prior decisions regarding R.C. 2307.28 are erroneous, and we do not address that issue at this time.

18

pertaining to surgeries performed by Dr. Durrani in 2010 and 2013. *Adams* at ¶ 5-7. The jury eventually found Dr. Durrani liable for negligence, lack of informed consent, fraudulent misrepresentation, battery, and loss of consortium. *Id.* at ¶ 8. The jury found Dr. Durrani negligent only with regard to the 2013 surgery. *Id.* at ¶ 80. However, the jury interrogatories were unclear as to whether its findings on lack of informed consent, battery, or fraudulent misrepresentation pertained to the 2010 surgery, the 2013 surgery, or both. *Id.* at ¶ 81. In harmonizing the special findings with the general verdict, we inferred that Dr. Durrani's liability stemmed entirely from the 2013 surgery. *Id.* The trial court denied Dr. Durrani's request to present the jury with an interrogatory apportioning fault to each of the causes of action. *Id.* at ¶ 83. Consequently, we could not disentangle on appeal the degree of fault apportioned to the intentional and unintentional torts. *Id.* at ¶ 89. Because we could not distinguish between the injuries caused by unintentional torts, to which the setoff would apply, and the intentional torts, which are not entitled to a setoff, we held that Dr. Durrani was not entitled to any setoff. *Id.*

{¶57} As in *Adams*, appellants in the case at bar were found liable for both an intentional tort (fraudulent misrepresentation) and an unintentional tort (negligence). The jury awarded Ms. McCann $108,076.40 in economic damages and $100,000 in noneconomic damages, totaling $208,076.40 in compensatory damages. The jury interrogatory for noneconomic damages allocated 50 percent of the damages to the negligence claim and 50 percent of the damages to the fraudulent-misrepresentation claim. The jury interrogatory pertaining to the economic damages did not allocate a percentage of damages per claim.

{¶58} Although the jury did not apportion the economic damages between the

19

intentional and unintentional tort, the jury did apportion Ms. McCann's non-economic damages. We can discern no reason that the apportionment of economic damages would be different. Accordingly, unlike the situation in *Adams*, we can infer from the interrogatory for the noneconomic damages that the jury found that Ms. McCann's injuries were caused half by appellants' intentionally-tortious conduct and half by appellants' unintentionally-tortious conduct. As a result, we hold that appellants are only entitled to a setoff against 50 percent of the jury's award.

{¶59} Ms. McCann's argument that appellants are not entitled to a setoff at all because appellants and the hospital defendants are not joint tortfeasors is unavailing. She cites *Atwood v. UC Health*, S.D.Ohio No. 1:16cv593, 2019 U.S. Dist. LEXIS 216184 (Dec. 17, 2019), for the proposition that R.C. 2307.28 only applies to joint tortfeasors. *Id.* at 22 ("for the statute to apply, the parties must be joint tortfeasors."). She points to *Atwood*'s recognition that medical malpractice and negligent credentialing are separate causes of action. *Id.* at 22-23, citing *Browning v. Burt*, 66 Ohio St.3d 544, 557, 613 N.E.2d 993 (1993). She claims that because they are separate claims, the hospital defendants and appellants are not joint tortfeasors.

{¶60} We agree that the two causes of action are distinct theories of liability. However, Ms. McCann has suffered a single, combined injury arising from appellants' malpractice and the hospital defendants' alleged negligence. And the setoff statute's focus is on the injury, not the theory of liability. *See* R.C. 2307.28 ("When a release * * * is given in good faith to one of two or more persons *for the same injury or loss * * *.*"). "Joint tortfeasors" are "[t]wo or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." *Black's Law Dictionary* 1794 (11th Ed.2019). There is no doubt that the alleged

20

conduct of the hospital defendants and conduct for which appellants were found liable both "contributed to" Ms. McCann's injury. Thus, they are joint tortfeasors.

**{¶61}** The issue in *Atwood* was whether the settlement with the hospital defendants of the negligent-credentialing claims could be set off against the jury award of punitive damages. *Atwood* at 23. The court's ultimate holding focused on the fact that punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Id.*, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 97, quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Thus, because punitive damages were separate from any remedy for plaintiff's injuries, the court held that the defendants were not entitled to a setoff. *Atwood* at 23. The focus in *Atwood* was on the injury or loss, as is required by R.C. 2307.28.

**{¶62}** Ms. McCann argues that the causes of action alleged against the hospital defendants in the complaint would have entitled her to seek punitive damages. She contends that the settlement with the hospital defendants resolved the punitive-damages claim and therefore was not compensation for the same injury. However, we have no information in the record that the settlement with the hospital defendants also included punitive damages.

**{¶63}** The trial court did not err in granting appellants a setoff. However, the trial court erred in determining the amount of the setoff. Pursuant to our current precedent, appellants may apply a setoff to the portion of the jury's award for the unintentional tort, but not to the intentional tort. We therefore sustain Ms. McCann's cross-assignment of error in part and overrule it in part. Based on the jury's findings,

appellants' setoff is limited to half of the jury's compensatory-damages award, or $104,038.20.

### *III. Conclusion*

{¶64} In the appeal numbered C-220025, we reverse the judgment of the trial court granting Ms. McCann's motion for prejudgment interest and court costs and affirm the trial court's judgment in all other respects. In the appeal numbered C-220033, we modify the judgment to reduce appellants' setoff from $157,530.83 to $104,038.20. As modified, Ms. McCann's total compensatory-damages award is $104,038.20.

Judgment accordingly.

BERGERON and KINSLEY, JJ., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.