[Cite as *Cincinnati ex rel. Miller v. Cincinnati*, 2024-Ohio-4805.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, EX REL. MARK MILLER, | : | APPEAL NO. C-230683<br>TRIAL NO. A-2204095 |
| Relator-Appellant, | : | *O P I N I O N.* |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| Respondent-Appellee, | : | |
| and | : | |
| JAN-MICHELLE LEMON KEARNEY, | : | |
| VICTORIA PARKS, | : | |
| JEFFREY CRAMERDING, | : | |
| REGGIE HARRIS, | : | |
| MARK JEFFREYS, | : | |
| SCOTT JOHNSON, | : | |
| LIZ KEATING, | : | |
| GREG LANDSMAN, | : | |
| and | : | |
| MEEKA OWENS, | : | |
| Respondents, | : | |
| and | : | |
| OVER-THE-RHINE COMMUNITY HOUSING, | : | |

:

     Intervenor-Respondent-
     Appellee.                   :

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is: Vacated and Cause Remanded

Date of Judgment Entry on Appeal: October 4, 2024

*The Law Firm of Curt C. Hartman, Curt C. Harman*, *Finney Law Firm LLC, Christopher P. Finney* and *Jessica Gibson,* for Relator-Appellant,

*Emily Smart Woerner,* City Solicitor, *Marion E. Haynes, III,* Deputy City Solicitor, and *Kevin M. Tidd,* Senior Assistant City Solicitor, for Respondent-Appellee City of Cincinnati,

*Suder, LLC, J.P. Burleigh, Sean S. Suder* and *Quinn Marker,* for Intervenor-Respondent-Appellee.

**Bock, Presiding Judge.**

{¶1}   Relator-appellant Mark Miller initiated a statutory taxpayer action to prevent respondent-appellee City of Cincinnati ("City") from passing a "notwithstanding ordinance" that would allow, under the zoning code, intervenor-respondent-appellee Over-The-Rhine Community Housing ("OTRCH") to build low-income housing on Dunlap Street in Cincinnati, Ohio. On appeal, Miller asks us to determine whether notwithstanding ordinances like the one at issue in this case, which was passed by the Cincinnati City Council, constitute an unconstitutional abuse of power in violation of the City of Cincinnati Charter.

{¶2}   But Miller lacks standing to challenge the notwithstanding ordinance. He has not shown that he is seeking to vindicate a public interest and therefore does not have standing to bring a taxpayer action under R.C. 733.59. Miller also has no personal stake in the outcome of his suit and lacks common-law standing to bring these claims.

{¶3}   Therefore, we vacate the trial court's judgment and remand the cause to the trial court to dismiss Miller's complaint for lack of standing.

### Facts and Procedure

{¶4}   The facts are straight forward and undisputed. OTRCH owns the real property at 2000 Dunlap Street ("Dunlap"), which is a surface parking lot and the property at the center of this dispute. Dunlap is in Cincinnati's "Urban Mix District," where the zoning code requires both a ten-yard rear setback and a minimum 700-square-foot area for each residential unit, or 14 total units in a congregate-housing facility. *See* Cincinnati Municipal Code 1410-07.

3

{¶5} But OTRCH planned to construct a "congregate-housing facility containing up to forty-four dwelling units maintained as affordable units" on the property ("Dunlap Project"). The proposal included a zero-foot rear setback and 226-square-foot residential units.

{¶6} OTRCH sought a variance from the City's zoning code's rear-setback and density requirements from the Cincinnati City Historic Conservation Board. The board held public meetings in January, June, and August 2022. While the board approved a certificate for appropriateness for the Dunlap Project and granted the rear-setback variance, it denied the density variance.

{¶7} Undeterred, OTRCH sought to convince several Cincinnati city councilmembers that the Dunlap Project was in the City's best interest. The council members referred a notwithstanding ordinance ("Dunlap Ordinance") to the Cincinnati City Planning Commission. In turn, the planning commission recommended that the city council approve the Dunlap Ordinance.

{¶8} Days later, Miller sent the city solicitor a taxpayer demand letter under R.C. 733.56. He sought injunctive and declaratory relief to prevent or vacate the enactment of the Dunlap Ordinance, which Miller characterized as an administrative or executive act by a legislative body and therefore an abuse of the city council's power. The city solicitor declined Miller's demand because "[n]otwithstanding ordinances are not administrative actions."

{¶9} The Cincinnati City Council unanimously passed the Dunlap Ordinance and the City's mayor signed it into law. The Dunlap Ordinance explained that OTRCH's proposal satisfied "the legislative variance criteria set forth in Section 111-5

of the Cincinnati Municipal Code" and furthered several existing development plans for the neighborhood.

{¶10} That same day, Miller filed his statutory taxpayer lawsuit on behalf of the City, seeking a declaratory judgment and injunctive relief, including a temporary restraining order, to stop the enactment of the Dunlap Ordinance.

{¶11} OTRCH intervened and moved for a judgment on the pleadings. Its motion argued, in part, that Miller lacked standing to challenge the Dunlap Ordinance because he was not seeking to vindicate a public right. The trial court summarily denied that motion.

{¶12} The parties filed competing summary-judgment motions, raising issues of standing and exhaustion in addition to addressing the merits of Miller's claims. The trial court agreed with the City and OTRCH on the merits. It determined that the Dunlap Ordinance was a legislative act "used to set aside laws," citing *State ex rel. Phillips Supply Co. v. City of Cincinnati*, 2012-Ohio-6096 (1st Dist.), and *Donnelly v. Fairview Park,* 13 Ohio St.2d 1 (1968). Finding that the City acted within its authority under the Cincinnati City Charter, the trial court granted the City's and OTRCH's summary-judgment motions.

## Law and Analysis

{¶13} Miller appeals the trial court's grant of summary judgment in one assignment of error. But as a threshold matter, OTRCH argues that Miller lacks standing to challenge the Dunlap Ordinance.

{¶14} Generally speaking, standing refers to a party's right or capacity to bring a legal claim. *Albanese v. Batman*, 2016-Ohio-5814, ¶ 24. Parties may stand before the court if they have personal or representational interests in the subject matter of the

5

claim. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017 ¶ 22, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* 35 Ohio St.2d 176, 179 (1973). Standing is an issue of law that we review de novo. *Phillips Supply Co.* at ¶ 16.

**{¶15}** Standing is necessary to make a matter justiciable. *McCann v. Durrani,* 2023-Ohio-3953, ¶ 20 (1st Dist.). And in Ohio, a common pleas court's jurisdiction is limited to "justiciable matters." Ohio Const., art IV, § 4(B). Thus, standing is necessary to invoke the jurisdiction of a common pleas court. *Schwartzwald* at ¶ 20. In other words, standing is a jurisdictional prerequisite to bringing a claim. *Id.* at ¶ 22. Courts must determine if parties have standing before entertaining the merits of a legal claim. *Ohioans for Concealed Carry, Inc v. City of Columbus*, 2020-Ohio-6724, ¶ 12.

**{¶16}** Standing turns on the nature and source of the party's claim. *Moore v. City of Middletown*, 2012-Ohio-3897, ¶ 23. The merits of a claim are irrelevant to a court's standing analysis. *Id.* And a party must have standing for each claim and relief requested. *Ohioans for Concealed Carry* at ¶ 13. Said differently, "[s]tanding ""is not dispensed in gross."""" *Id.,* quoting *Preterm-Cleveland, Inc. v. Kasich*, 2018-Ohio-441, ¶ 30, quoting *Davis v. FEC,* 554 U.S. 724, 734 (2008), quoting *Lewis v. Casey*, 518 U.S. 343, 358, fn. 6 (1996). When a party lacks standing to raise a claim, that claim must be dismissed. *Durrani* at ¶ 20.

**{¶17}** Common-law standing is satisfied if the party suffered an alleged injury that was caused by the defendant's allegedly unlawful conduct and can be redressed by the requested relief. *See Ohioans for Concealed Carry* at ¶ 12. Miller does not attempt to establish standing under the common law. Indeed, there is nothing in his claims to suggest that Miller's standing is predicated on either a private injury or personal stake in the outcome of this case.

6

{¶18} Miller's lack of common-law standing is not fatal to his case because in Ohio, standing may be conferred by statute. *Ohioans for Concealed Carry,* 2020-Ohio-6724, at ¶ 23. When parties rely on a statute to confer standing, courts first must determine if the statute authorizes the parties to bring their claims. *Middletown v. Ferguson,* 25 Ohio St.3d 71, 75-76 (1986), quoting *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). This requires an express intent to abrogate common-law standing requirements. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 29 (10th Dist.).

{¶19} Relevant here, a city solicitor may seek on behalf of a municipal corporation "an order of injunction to restrain . . . the abuse of its corporate powers." R.C. 733.56. A taxpayer may demand that the city solicitor seek injunctive relief under that statute. *See* R.C. 733.59. If the city solicitor declines that demand, "the taxpayer may institute suit in his own name, on behalf of the municipal corporation." *Id.* The taxpayer must deposit a "security for the cost of the proceeding." R.C. 733.59.

{¶20} Miller argues that he has taxpayer standing under R.C. 733.59. The parties do not dispute that Miller pays taxes to the City of Cincinnati, that the city solicitor rejected Miller's demand letter, or that Miller deposited the necessary security for costs related to the proceeding. Miller claims that, as a matter of statutory interpretation, this is all the law requires for him to stand before the court as a taxpayer on behalf of a municipality. But his interpretation breaks with well-establish principles of taxpayer standing under R.C. 733.59.

{¶21} The Supreme Court of Ohio has repeatedly reaffirmed its holding that a "taxpayer" under R.C. 733.59 is an individual who volunteers to ""enforce a right of action on behalf of and for the benefit of the public."" *Ohioans for Concealed Carry,* 2020-Ohio-6724, at ¶ 23, quoting *State ex rel. White v. Cleveland*, 34 Ohio St.2d 37,

40 (1973), quoting *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1 (1966), paragraph two of the syllabus. Accordingly, taxpayer actions under R.C. 733.59 must be filed to "enforce a public right, regardless of any personal or private motive or advantage." *State ex rel. Fisher v. City of Cleveland*, 2006-Ohio-1827, ¶ 12, quoting *State ex rel. Caspar v. Dayton*, 53 Ohio St.3d 16, 20 (1990).

{¶22} This public-right requirement prevents "mere interlopers" attempting to "'"meddle with the affairs of the state, and [taxpayer suits are] not usually allowed *unless under circumstances when the public injury by its refusal will be serious.*"'" (Emphasis in *Teamsters*.) *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 2012-Ohio-1861, ¶ 12, quoting *State ex rel. Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 472 (1999), quoting *State ex rel. Trauger v. Nash*, 66 Ohio St. 612, 616 (1902), quoting *People ex rel. Ayres v. Bd. of State Auds.*, 42 Mich. 422 (1888). This is why "taxpayers cannot contest official acts 'merely upon the ground that they are unauthorized and invalid.'" *Teamsters* at ¶ 16, quoting *Pierce v. Hagans*, 79 Ohio St. 9, 22 (1908). In fact, the Supreme Court of Ohio reasoned in *Teamsters* that "allowing constant judicial intervention into government affairs for matters that do not involve a clear public right would also not benefit the public." *Id.* at ¶ 17.

{¶23} Miller does not attempt to identify a public right in his appellate brief. Instead, he argues that *City of Cincinnati ex rel. Smitherman v. City of Cincinnati*, 2010-Ohio-2768 (1st Dist.), governs the outcome of this case and supports his argument that he has standing as a taxpayer "regardless of whether he seeks to vindicate a public interest or benefit."

{¶24} In *Smitherman*, we rejected the City of Cincinnati's argument that, because Smitherman had no personal stake in the outcome of the case, he lacked

standing under R.C. 733.59. *Id.* at ¶ 19. We unequivocally held that taxpayers have standing to enforce "a public right, regardless of private or personal benefit." *Id.* And significantly, the notwithstanding ordinance in *Smitherman* created confusion around the authority to appoint members to the Cincinnati Metropolitan Housing Authority ("CMHA") board and caused vacancies. *Id.* at ¶ 19. There is a clear public benefit in a fully-staffed CMHA board, which enables it to carry out its mission of rebuilding underserved neighborhoods and providing low-income families safe and sanitary housing. *See* R.C. 3735.51.

{¶25} Two years after *Smitherman*, we held that businesses in the Queensgate neighborhood lacked taxpayer standing under R.C. 733.59 to challenge the relocation of a homeless shelter into their neighborhood. *Phillips Supply Co.,* 2012-Ohio-6096, at ¶ 4 (1st Dist.). We reasoned that depreciation of property value is "quintessentially a private motive," and an injunction in that case would affect "relatively few individuals in relation to the city as a whole." *Id.* at ¶ 21. We explained that an ancillary public benefit is "not enough to confer taxpayer standing." *Id.* at ¶ 22. Because invalidation of the ordinance at issue in *Phillips Supply Co.* had no potential to affect any public right, the businesses lacked standing as taxpayers under R.C. 733.59. *Id.* at ¶ 23. But while the businesses lacked taxpayer standing to seek injunctive relief, they did have standing as adjacent landowners to seek declaratory relief. *Id.*

{¶26} In sum, it is well-settled in Ohio that taxpayer suits under R.C. 733.59 must vindicate a public right. Like the taxpayer lawsuit in *Phillips Supply Co.,* Miller's lawsuit has no potential to affect a public right. In fact, Miller has offered no explanation for how an injunction restraining the City from executing the Dunlap Ordinance would benefit the public or vindicate a public right. And unlike the lawsuit

in *Phillips Supply Co.,* Miller's lawsuit has no potential to affect any of his private rights.

{¶27} So, Miller lacked standing to bring his lawsuit both as a taxpayer and under the common law. Accordingly, the trial court lacked jurisdiction and should have dismissed the action, rather than ruling on its merits. And because the trial court lacked jurisdiction to entertain Miller's claims, his assignment of error is moot.

## Conclusion

{¶28} We vacate the trial court's judgment and remand the cause to the trial court with instructions to dismiss Miller's complaint for lack of standing.

Judgment vacated and cause remanded.

ZAYAS and KINSLEY, JJ., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.